UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 1:19-cr-00280-JRS-DLP |
| EDWIN AGBI, | ) ) | -01 |
| Defendant. | ) ) | |

**Order on Motion for Judgment of Acquittal or for New Trial**

A jury found Defendant Edwin Agbi guilty on all Counts with which he was charged: Mail Fraud, in violation of 18 U.S.C. § 1341; Use of a Fictitious Name in Furtherance of Mail Fraud, in violation of 18 U.S.C. § 1342; Conspiracy to Commit Mail Fraud, in violation of 18 U.S.C. §§ 1341 and 1349; and Conspiracy to Commit Money Laundering, in violation of 18 U.S.C. §§ 1956(a) and 1956(h). (Verdict Form, ECF No. 153.) In short, Agbi was a middleman in a scheme in which his co-conspirators used an online dating platform, designed for elderly people, to misrepresent their identities, pretend to be in relationships with the victims, and successfully solicit money from them. The co-conspirators would then direct the victims to send the money to Agbi, and Agbi would transfer the money to Nigeria. Agbi has now moved for a judgment of acquittal, or, in the alternative, for a new trial. (ECF No. 159.) For the following reasons, Agbi's Motion, (ECF No. 159), is **denied**.

## Discussion

Agbi's argument is twofold. First, he argues his right to a fair trial was

compromised because nationality bias existed throughout the trial—Agbi is of Nigerian nationality—and because the Government engaged in inflammatory conduct. (Def.'s Mot. 4, ECF No. 159.) The Court may grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33. Such relief is "reserved for only the most 'extreme cases.'" *United States v. Linwood*, 142 F.3d 418, 422 (7th Cir. 1998) (quoting *United States v. Morales*, 902 F.2d 604, 606 (7th Cir. 1990)); *see also United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir. 1989) ("[C]ourts have interpreted [Rule 33] to require a new trial 'in the interests of justice' in a variety of situations in which the substantial rights of the defendant have been jeopardized by errors or omissions during trial.").

Second, Agbi argues that there was insufficient evidence to sustain his convictions. (Def.'s Mot. 4, ECF No. 159.) In assessing a motion for judgment of acquittal, the Court asks whether "there was relevant evidence from which the jury could reasonably find [the defendant] guilty beyond a reasonable doubt, viewing the evidence in the light most favorable to the Government." *United States v. Wilson*, 879 F.3d 795, 802 (7th Cir. 2018) (quoting *United States v. Blasco*, 581 F.2d 681, 684 (7th Cir. 1978)).

**A. Motion for New Trial**

Agbi makes three main points in support of his argument that the trial was infected with nationality bias. First, he notes that while he requested that the Court more exhaustively question the jury during voir dire about any possible nationality bias, (*see* Def.'s Proposed Voir Dire Questions 4, ECF No. 143), the Court did not do

so, and therefore, the prospective jurors' prejudices were not sufficiently revealed. Further, Agbi notes that there is a "reasonable probability" that the jury was influenced by the dialogue among venire members about knowing someone who had been subjected to a Nigerian fraud scheme. (Def.'s Mot. 5, ECF No. 159.)

However, the Court considered and incorporated Agbi's proposed voir dire questions. While the Court did not include all of Agbi's proposed questions, the Court informed the venire that Agbi was of Nigerian nationality and asked (1) whether that fact would prevent anyone from being able to reach a fair and impartial decision, based solely on the evidence admitted during trial and the instructions on the law, and (2) whether anyone would hold Agbi's Nigerian nationality against him. No prospective jurors indicated affirmatively. Further, the Court informed Agbi that he was free to include more exhaustive questioning on this subject during his allotted time for attorney-conducted voir dire.

The Seventh Circuit has already determined that this questioning was sufficient "to produce, in light of the factual situation involved in the particular trial, some basis for a reasonably knowledgeable exercise of the right of challenge." *United States v. Mordi*, 277 F. App'x 613, 616 (7th Cir. 2008) (quoting *United States v. Torres*, 191 F.3d 799, 810 (7th Cir. 1999)). In *United States v. Mordi*, a Nigerian defendant argued that the trial judge failed to question sufficiently prospective jurors about biases they might harbor against Nigerians. *Id.* While the defendant had proposed more in-depth questioning about his nationality, the trial judge limited the court's question to informing the jury of the defendant's nationality and asking whether

3

anyone could not follow the rule that the defendant's race and ethnicity could not play any role in the jury's decision. *Id.* at 617. The Seventh Circuit held that this was "specific enough to elicit any possible prejudice," and that the trial judge was within her rights to refuse the defendant's extra questions and avoid "unduly inserting bias into the voir dire itself." *Id.* (quoting *United States v. Torres*, 191 F.3d 799, 810 (7th Cir. 1999)). *Mordi* is indistinguishable from the Court's conduct here.

Further, the "considerable amount of dialogue" by the venire about knowing someone who had been subjected to a Nigerian fraud scheme, (Def.'s Mot. 5, ECF No. 159), was a result of the Court's questioning—at Agbi's request—in an effort to uncover any such bias. Agbi cites no authority for his conclusion that there was a "reasonable probability that this discussion influenced the jury before the trial began." (Def.'s Mot. 5, ECF No. 159.) "[M]ere speculation or conjecture is insufficient to warrant a new trial." *United States v. Reed*, 2 F.3d 1441, 1451 (7th Cir. 1993) (citing *United States v. Handy*, 351 U.S. 454, 462 (1956)). Neither this "dialogue" nor the Court's questioning about Agbi's nationality serves as grounds for a new trial.

Second, Agbi cites the Court's refusal to strike for cause two potential jurors he asserts were biased, thereby depriving him of his right to an impartial jury. Agbi ultimately used two of his peremptory challenges to strike those jurors. He claims that had he not been forced to use those two peremptory challenges, the only African American juror in the venire—who ultimately served as an alternate juror—would have been seated on the deliberating jury.

The Seventh Circuit has foreclosed this argument as well. Even assuming the Court erred in refusing to strike these two jurors for cause, Agbi exercised his peremptory challenges to exclude them from the jury. When "none of the jurors whose voir dire is challenged" sat on the jury, a defendant has "not [been] deprived of any rule-based or constitutional right." *United States v. Brodnicki*, 516 F.3d 570, 575 (7th Cir. 2008) (citing *United States v. Martinez-Salazar*, 528 U.S. 304, 313 (2000) (as long as the jury that sits is impartial, the Sixth Amendment is not violated, even if the defendant has to use a peremptory challenge to achieve that result), and *United States v. Polichemi*, 219 F.3d 698, 703–05 (7th Cir. 2000) (where a district court should have excused a juror for cause, but the juror is excused through a peremptory strike, the district court's error in failing to excuse the juror does not call into question the impartiality of the jury ultimately selected)). Therefore, Agbi was not "denied the right to an impartial jury because he had to use these preemptive strikes." (Def.'s Mot. 6, ECF No. 159.) Similarly, any argument that Agbi was entitled to have the African American alternate juror on the deliberating jury is misplaced. "There is 'no legally cognizable right to have any particular juror participate in [a defendant's] case.'" *United States v. Cardena*, 842 F.3d 959, 973 (7th Cir. 2016) (quoting *Polichemi*, 201 F.3d at 865); *see also United States v. Russell*, 463 F. App'x 585, 586–87 (7th Cir. 2012) (quoting *Rivera v. Illinois*, 556 U.S. 148, 157 (2009)) ("[The defendant's] argument that one prospective juror who did not sit on his jury *would* have been unbiased does not establish a violation of his constitutional rights to due process and an impartial jury; these rights are satisfied as long as a defendant is tried

before a 'qualified jury composed of individuals not challengeable for cause.'"). Agbi does not claim that any of the members of the jury were biased. Therefore, his argument for a new trial on this ground fails.

Third, Agbi takes issue with the Government's characterization of the conspiracy as a "Nigerian fraud scheme." He also references the Government's demonstrative exhibit, which included a picture of Africa as the "source" for the scammers, as well as Special Agent Nehring's testimony that the majority of scammers of this type of "romance" scam come from Nigeria. (Def.'s Mot. 7, ECF No. 159.) He claims he could not have received a fair trial in light of these references alongside references to his Nigerian nationality.

"The Constitution prohibits a prosecutor from making race-conscious arguments since it draws the jury's attention to a characteristic that the Constitution generally demands that the jury ignore." *United States v. Hernandez*, 865 F.2d 925, 928 (7th Cir. 1989) (citing *McCleskey v. Kemp*, 481 U.S. 279, 310 n.30 (1987)) (prosecutor's remark during rebuttal that a guilty verdict would "send a clear message to Cuban drug dealers" was improper, but not so inflammatory as to prejudice the defendant and, in light of the substantial evidence against the defendant, did not alter the outcome of the trial). The Court first views the statements "to determine whether they were improper." *Aliwoli v. Carter*, 225 F.3d 826, 831 (7th Cir. 2000). "As a general rule, a racial remark is improper if it is 'intentionally injected into volatile proceedings where the prosecutor had targeted the defendant's ethnic origin for emphasis in an attempt to appeal to the jury's prejudices.'" *Id.* (quoting *Hernandez*,

6

865 F.2d at 928). In *Aliwoli*, the Seventh Circuit determined that the prosecutor's references to and questions about the defendant's membership in the black Muslim faith were not improper, as they were only meant to show the defendant's motive and state of mind and to rebut his insanity defense. *Id*. The references could not "be reasonably viewed as attempting to arouse jury prejudice towards blacks or Muslims." *Id*.

The same is true here. Agbi's co-conspirators were from Nigeria. Agbi laundered the proceeds of the scheme to his co-conspirators in Nigeria, in Nigerian naira. The Government's demonstrative exhibit included a picture of Africa because that is where the co-conspirators were located. These factual references were not improper.

Special Agent Nehring testified that there are criminals throughout the world, but that there are countries notorious for committing certain types of crimes. She provided examples, such as how Romanians are well-known for credit card fraud, Chinese are noted for hacking and counterfeiting, and Jamaicans are well-known for lottery fraud. She then stated that Nigerians are well-known for this type of romance scam. She testified that she had investigated hundreds of cases that involved this sort of romance scheme, and that phone numbers, internet protocol addresses, and interviews with suspects, witnesses, and confidential sources all led to a consistent finding that this type of scam is tied to Nigeria. Special Agent Nehring's testimony was based on objective evidence underlying her hundreds of investigations; it was not "an attempt to appeal to the jury's prejudices." *Aliwoli*, 225 F.3d at 831 (quoting *Hernandez*, 865 F.2d at 928). Even without this background establishing her

expertise, the admissible factual evidence established that this particular scam was in fact tied to co-conspirators in, and involved the transfer of Nigerian currency (naira) to, Nigeria. Mentioning Nigeria could not be avoided in the presentation of evidence.

Even if these remarks were improper, they did not deprive Agbi of a fair trial when viewing the record as a whole. *Id.* (citing *Hernandez*, 865 F.2d at 927). The Government "presented highly persuasive evidence showing that" Agbi possessed the requisite knowledge and intent, the key disputed issues at trial, to be convicted. *Id.* And, as in *Aliwoli*, the Court "properly instructed the jury to disregard [Agbi's] race" when reaching its verdicts. (ECF No. 152-1 at 2; ECF No. 152-2 at 3.) Also, Agbi did not request any additional limiting instructions. In sum, Agbi was not deprived of a fair trial due to any nationality bias.

Agbi's next argument in support of his motion for a new trial concerns allegedly inappropriate conduct by the Government. Two of the victims who testified at trial were elderly—it was the Government's theory that the conspirators intentionally targeted elderly victims due to their susceptibility—and used a cane or wheelchair or were otherwise assisted when entering the courtroom and taking the witness stand.[1] Agbi claims that the witnesses' entrances were "designed to elicit sympathy" from the jury, thereby denying him a fair trial. (Def.'s Mot. 7–8, ECF No. 159.)

---

[1] Agbi also states that one of the victims had the appearance of an "incontinence issue because the front of his pants looked wet." (Def.'s Mot. 7, ECF No. 159.) Neither the Government, (Government's Resp. 20 n.1, ECF No. 162), nor the Court recalls such an appearance, which would have been shielded from the jury by the bench and the witness stand in any event. Regardless, the Court's analysis would not change if this contention were true.

First, there is no evidence that the Government "designed" these entrances, as opposed to their being the natural result of the witnesses' age and health. Age often brings infirmity. Jurors know this. It does not follow that seeing an elderly person use a cane or wheelchair—in a trial centered on a scheme in which elderly people were targeted via a dating website designed for elderly people—was prejudicial or even surprising. Second, after the defense raised the issue, and despite not believing there to be any undue prejudice presented by the reduced mobility of the witnesses, the Court, at least once, attempted to mitigate the issue by removing the jury from the courtroom before the witness left the stand. Third, the Court twice instructed the jurors of their duty to decide the case based on the Court's instructions on the law and the evidence and not to allow sympathy to play a role, (ECF No. 152-1 at 2; ECF No. 152-2 at 3), and "jurors are presumed to follow limiting and curative instructions unless the matter improperly before them is so powerfully incriminating that they cannot be reasonably expected to put it out of their minds." *United States v. Tucker*, 714 F.3d 1006, 1014 (7th Cir. 2013) (quoting *United States v. Smith*, 308 F.3d 726, 739 (7th Cir. 2002)). Two elderly witnesses receiving assistance to the witness stand is not "so powerfully incriminating" as to warrant a new trial, particularly in light of the multitude of incriminating evidence presented. Agbi is not entitled to a new trial.

### B. Motion for Judgment of Acquittal

Next, Agbi contends that the evidence at trial was insufficient to sustain a conviction on all Counts.

9

Count One charged Agbi with committing Mail Fraud by defrauding E.M. between February 26 and March 1, 2019, and Count Two charged him with Use of a Fictitious Name in Furtherance of Mail Fraud during that same period. The jury heard testimony from E.M. and saw exhibits corroborating that E.M. was led to believe that he was in a relationship with a person named Elizabeth Stevens, when "Stevens" was really a co-conspirator who created a fake dating profile. The jury heard testimony from the real person in the photographs used on Stevens's profile, who confirmed she was not the one sending these messages. The jury saw messages from Stevens directing E.M. to send a package of money to "Kareem Sunday," the fictitious name behind Count Two, at Agbi's Indianapolis address. E.M. did so, including items of a romantic nature—chocolate, a novel, and soap—with the cash, which Agbi saw when he opened the package. Messages between Agbi and co-conspirator Realone Cairo show the two discussing the package and its delivery status, Cairo sharing his banking information, and Agbi transferring naira to Cairo's account. Cairo also states that "E put money there," referring to E.M. placing money in the package. The jury was entitled to find Agbi's explanation for why he was expecting to receive this package of cash implausible, particularly considering the lack of evidence supporting his claim. *United States v. Wilson*, 879 F.3d 795, 802 (7th Cir. 2018) (quoting *United States v. Blasco*, 581 F.2d 681, 684 (7th Cir. 1978)) ("[I]t is the exclusive function of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences."). Messages between Agbi and a co-conspirator regarding another package show Agbi asking the co-conspirator to pick up a package

for him. When the co-conspirator asked whether Agbi's name would be on the package, Agbi responded, "Monday Kareem not my name lol." This highlights just a portion of the Government's evidence, but it was sufficient for the jury to find Agbi guilty beyond a reasonable doubt on Counts One and Two. Agbi's knowledge of the scheme and intent to defraud are further revealed by the evidence underlying the broader conspiracy charge in Count Three. *See* Fed. R. Evid. 404(b)(2).

Count Three charged Agbi with Conspiracy to Commit Mail Fraud, and Count Four charged him with Conspiracy to Commit Money Laundering. The jury heard a story nearly identical to that of E.M. from another witness, J.G. She, too, sent packages of cash to "Kareem Sunday" at the request of a co-conspirator disguised as a romantic partner. Indeed, Agbi stated in an interview with Special Agent Nehring that he had received over $75,000 in cash from various packages. And messages between Agbi and co-conspirators reflect Agbi's knowledge of the scheme and intent to join and advance the conspiracies. These messages show co-conspirators informing Agbi that packages were being sent to him, Agbi requesting the co-conspirators' banking information, and Agbi transferring money (converted to Nigerian naira) to those bank accounts. Agbi discusses with a co-conspirator the percentage of the funds he should be entitled to keep if the co-conspirator mailed him money, and the two negotiated rates and referenced Realone. There are references to "clients," "gingering" those "clients," and a "client" who is going to block the co-conspirator and find another "wife." Special Agent Nehring testified that based on her experience investigating hundreds of these romance schemes, the word "client" means "fraud

11

victim," and "ginger" means to help butter up the "client" so he would send money. While the Court has summarized just a portion of the evidence, it alone was sufficient for the jury to find Agbi guilty beyond a reasonable doubt of the conspiracies charged in Counts Three and Four.  Therefore, the Court will not set aside the jury's verdicts.

### C. The Court's Communication to the Jury

Ash Wednesday fell on March 2, 2022, the same day the presentation of evidence and closing arguments concluded.  Several jurors expressed religious commitments and asked for permission to leave early.  The Court advised the jury that if it had not reached a verdict, deliberations would conclude at 4:00 p.m. and resume the next morning.  Agbi's final argument is that in doing so, the Court "indirectly incentivized a quick verdict." (Def.'s Mot. 11–12, ECF No. 159.)  He notes that the jury deliberated for approximately forty-five minutes before returning a verdict.

The Court's communication was not improper and does not require a new trial. The Court did not "set a deadline, either explicit or implicit, for the jury's deliberations." *United States v. Herrera*, 704 F.3d 480, 487 (7th Cir. 2013).  In every case, the jury returns the following day to continue deliberations if it cannot reach a verdict, and informing the jury that it will need to return does not result in a rushed verdict.  If anything, *not* telling the jury that it would be permitted to leave at 4 p.m. may have rushed a verdict, as the jurors may have rushed in order to make their religious commitments. The Court's communication was not error.  *See Herrera*, 704 F.3d at 488–49 (no error when district court informed jurors it would accommodate

their vacation schedules and one juror was scheduled to leave the day after deliberations began).

## Conclusion

Agbi's Motion for Judgment of Acquittal, or, in the alternative, for a New Trial, (ECF No. 159), is **denied**.

**SO ORDERED**.

Date: 05/20/2022

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution to registered parties of record via CM/ECF.